IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LEWIS SETTLEMENT GROUP, INC., ) | |
| Appellant, ) | |
| ) | |
| v. ) | 1:09cv1344(LMB/IDD) |
| ) | |
| ADNAN TUFAIL MIRZA, ) | |
| Appellee. ) | |

FILED
AUG 10 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

MEMORANDUM OPINION

This appeal arises from the bankruptcy court's denial of appellant's Motion for Relief from the Automatic Stay. Appellant Lewis Settlement Group ("LSG"), sought relief from the automatic stay to add the debtor, Adnan Mirza ("Mirza") as a defendant to a complaint filed in the United States District Court for the District of Columbia (the D.C. Action). That complaint alleges that plaintiff suffered extensive damages due to the defendant's violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and Virginia statutory and common law conspiracy to commit fraud. LSG asks this Court to vacate the bankruptcy judge's decision and to lift the automatic stay. For the reasons below, the decision of the bankruptcy court will be AFFIRMED.

I.  BACKGROUND

In 2005, LSG entered into a business arrangement with TM Mortgage Corp. ("TM"), a mortgage brokerage company formed by appellee Mirza's father ("Mirza Sr."). Under that arrangement, LSG provided residential settlement services for TM. Beginning

in 2005, LSG closed over two hundred and sixty-three loans originated by TM. Appellee Mirza's real estate company, American Eagle Realty LLC ("AER"), represented the sellers and/or buyers in many of those transactions. One of these transactions, for which LSG performed settlement services and caused title insurance to be issued,[1] concerned a property purchased by Frank McAleese. This transaction turned out to be a straw purchase for TM and Mirza. For this transaction, Mirza was the seller, listing agent, broker, buyer's agent, listing broker, and selling broker. In the loan agreement, TM made intentional misstatements of fact, including exaggerating McAleese's income and falsely asserting McAleese intended to make the property his residence. Mirza affirmatively stated in an affidavit to LSG that there were no liens or trusts on the property, when in fact there was a $32,000.00 trust held on the property by Countrywide Home Loans. Based on these misrepresentations, LSG wired $436,360.39 to Mirza under the settlement agreement. When the deal went sour, LSG was liable for repaying that debt. Mirza's ultimate responsibility for that injury to LSG is apparent from the fact Mirza entered into a Consent Order with the Virginia Department of Professional Regulation in February, 2009, that resulted in the revocation of

---

[1] Although LSG states in its brief that it issued title insurance for the McAleese transaction, in its RICO complaint in the U.S. District Court for the District of Columbia, it states that LSG was ultimately "sued by the title insurer, Stewart Title Company[,]" to whom LSG paid $350,000.00 "to settle the claim."

2

his Virginia real estate broker's license and admitted that "proceeding with settlement and not paying off the original trust, causing a third party's obligation to make the payoff for which [Mirza] was responsible, constitutes improper, fraudulent, and dishonest conduct."

Mirza filed a Voluntary Chapter 7 bankruptcy Petition on December 11, 2008, in which he named LSG as a creditor. In both the bankruptcy proceeding and its D.C. Action LSG alleges that Mirza filed for bankruptcy in part to discharge "his $436,360.49 debt to LSG." Mirza is apparently now claiming in the bankruptcy court, however, that LSG is not in fact a creditor. LSG claims that, due to its "unwitting role in providing settlement services for many of these sham transactions," it suffered actual money damages from at least two transactions and general losses due to payment to lenders and underwriters, attorneys' fees, loss of business, and loss of title underwriting capabilities.

During the course of the bankruptcy proceedings, LSG became concerned about allegedly gross representations in Mirza's bankruptcy petition, his alleged refusal to produce bank records, and irregularities in his under-oath exam for the bankruptcy proceedings under 11 U.S.C. § 341 (in which Mirza stated he created sham trusts to hide assets from creditors, and transferred assets "because I had a lawsuit by Fitzgerald Lewis, and just to hide assets from him."). LSG accordingly subpoenaed Mirza's bank records, as well as those of his family members and

3

associated business entities. These documents were received in mid April 2009, nearly five months after Mirza filed for bankruptcy, at which time LSG uncovered what it refers to as a massive real estate racketeering scheme perpetrated by the debtor, his family, and a number of the Mirza family's business associates. It was at this time that LSG claims it first discovered its potential RICO claim against many of these entities and persons, including Mirza.

LSG filed a Proof of Claim against Mirza for the McAleese transaction on June 12, 2009, and filed a Complaint Objecting to the Discharge of Mirza's Debts on July 22, 2009, in which it alleged various incidents of bankruptcy fraud including: transfer from/concealment of assets in the bankruptcy estate by transferring them to TM and Mirza Sr.; by making false oaths in his petition including omitting his ownership/association with TM and understating his income; falsely stating under oath at his § 341 meeting in January, 2009 that he had not turned over the $436,360.39 to Mirza Sr. (Mirza later stated under oath that he *had* done so); and several other instances of fraud. LSG also alleges that Mirza's attorneys are aware of the falsity of several of Mirza's representations, but have not amended Mirza's bankruptcy petition. The Trustee has filed adversary proceedings against Mirza Sr. and TM for illegally receiving funds belonging to Mirza's estate.

The D.C. Action, filed on August 7, 2009, alleges that the

4

defendants engaged in a Virginia statutory conspiracy, Virginia common law conspiracy to commit fraud, and a federal racketeering enterprise. The predicate acts in the RICO claim include wire fraud, mail fraud, mortgage fraud, money laundering, bankruptcy fraud, and witness tampering. Mirza was not included in the complaint due to the automatic stay. As a result, the defendants in the D.C. Action have filed a Motion to Dismiss for Failure to Join an Indispensable Party. LSG argues that Mirza is a central figure in the alleged RICO enterprise, and that access to discovery and testimony from him is vital to its case. LSG contends that if the D.C. Action continues without Mirza as a defendant, Mirza will be able to abdicate responsibility and assign blame to the defendants in the D.C. Action, and the defendants may avoid liability if their Motion to Dismiss is granted.

On August 24, 2009, LSG filed a Motion for Relief from the Automatic Stay, seeking permission to add Mirza to the D.C. Action. At the hearing, the bankruptcy judge observed that the D.C. Action involves many of the same issues currently pending in the bankruptcy court, and concluded that: "I don't think that sufficient grounds have been shown to add the debtor to yet another lawsuit in a different jurisdiction that is rehashing the same things that have been brought before and are presently pending in this court. . . . The issue that you seek to raise can be adjudicated on the court's docket to be adjudicated in this

court. They're one and the same. I don't see that the debtor ought to be made to answer to them twice." A Final Order was entered, but no opinion issued.

II. ANALYSIS

The two issues raised in this appeal by LSG are whether the bankruptcy court abused its discretion in concluding that LSG's post-petition RICO claims were essentially included within the pending bankruptcy proceeding and in denying LSG's Motion for Relief from the Automatic Stay to pursue pre- and post-petition RICO claims where there was excusable neglect for filing the RICO suit after the commencement of the bankruptcy proceeding and where sufficient cause was shown to lift the automatic stay.

A bankruptcy petition automatically operates as a stay of the commencement or continuation of a judicial action against the debtor that was, or could have been, brought pre-petition. 11 U.S.C. § 362(a)(1). Within thirty days of the filing of a motion to lift the stay, the stay must be "terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued[.]" 11 U.S.C. § 362(e). The bankruptcy court must grant relief from the stay "for cause." 11 U.S.C. § 362(d). "Cause" is evaluated on a case-by-case basis, after balancing potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. In undertaking this balancing test, the

bankruptcy court must consider three factors:

> (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

In re: Robbins, 964 F.2d 342, 345 (4th Cir. 1992). "While Congress intended the automatic stay to have broad application, the legislative history to section 362 clearly indicates Congress' recognition that the stay should be lifted in appropriate circumstances." Id.

Although "the party requesting such relief has the burden of proof on the issue of the debtor's equity in property," 11 U.S.C. § 362(g)(1), the burden of proof "on all other issues" falls on the party opposing the lift of the stay. § 362(g)(2).

A bankruptcy court's legal conclusions are reviewed de novo and its findings of fact are set aside only for abuse of discretion. In re: Robbins, 964 F.2d at 345. An abuse of discretion occurs only when a bankruptcy court relies upon clearly erroneous findings of fact or uses an erroneous legal standard. Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).

Two issues are involved in this appeal. First is whether the claims LSG seeks to litigate in its D.C. Action arose before

7

or after Mirza filed for bankruptcy. Actions on claims that arise after the filing of the bankruptcy proceedings are not subject to the automatic stay, see Bellini Imports, Inc. v. The Mason & Dixon Lines, Inc., 944 F.2d 199, 201 (4th Cir. 1991); however, the Bankruptcy Code imposes an automatic stay on any "judicial . . . action. . . that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 361(a)(1).

A claim arises when the acts giving rise to liability occur, not when the injury caused by those acts is manifested. Grady v. A.H. Robins Co., Inc., 839 F.2d 198, 201-202 (4th Cir. 1988) (an action arising from injury caused by a defective birth control implant inserted pre-petition was subject to the automatic stay even though the injury did not manifest until after the bankruptcy petition was filed by the manufacturer).[2] A RICO claim requires at least two predicate acts of racketeering activity, 18 U.S.C. § 1961(5) (defining a "pattern of racketeering activity"), and appellant LSG has identified and charged two such predicate acts in its RICO complaint that it claims are post-petition (bankruptcy fraud and witness tampering). However, four other predicate acts alleged in the

---

[2] Appellee incorrectly cites to Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 220 (4th Cir. 1987), a case governing when a RICO claim accrues for purposes of a statute of limitations (at the time an injury is, or should have been, discovered).

8

D.C. Action occurred pre-petition, and though it appears to be an unanswered question whether long patterns of RICO activities charged as general RICO conspiracies can be divided for the purpose of avoiding a bankruptcy stay, the complaint's accounts of the allegedly post-petition predicate acts themselves also incorporate specific acts by Mirza that occurred pre-petition.[3]

On this record, the bankruptcy court correctly found that the RICO conspiracy arose long before Mirza's bankruptcy petition was filed, and that the complaint in the D.C. Action, including the RICO counts, the bankruptcy fraud predicate act, and the witness tampering predicate act, all "could have been commenced" pre-petition. Therefore the bankruptcy court correctly found that the automatic stay covered all causes of action in the D.C. Action.

In ruling on LSG's motion, the bankruptcy judge did not explicitly mention In re: Robbins or any of the In re: Robbins factors. Even though the bankruptcy judge failed to articulate the appropriate legal standard, the denial of the Motion for Relief from the Automatic Stay was not an abuse of discretion. At the outset it is significant that Mirza failed to put facts

---

[3] See p. 129, para. 379 ("Between December 11, 2006 and the present date, Adnan Mirza knowingly and fraudulently concealed property belonging to his bankruptcy estate[.]"); p. 133, para. 396 ("On or about September 14, 2008, Adnan Mirza knowingly approached Frank McAleese at Kenese Hair Salon to dissuade McAleese from testifying[.]"). Moreover, the RICO counts, found at pages 137 and 140, state that the RICO conspiracy began in June 2005.

9

before the bankruptcy court relevant to the In re: Robbins test. Obviously, however, the bankruptcy judge was keenly aware of all the relevant facts through his prolonged involvement in the bankruptcy proceedings, and his decision was consistent with the In re: Robbins factors.

Although there are state law claims asserted in the D.C. Action, that complaint was not filed in state court but in federal court; accordingly, concerns of deference to the expertise of the state court (the first In re: Robbins concern) has no application to this case. Neither does the second In re: Robbins inquiry (judicial economy) weigh in favor of lifting the stay, because unlike the underlying action at issue in In re: Robbins, LSG filed its complaint significantly after the bankruptcy petition was filed, and the bankruptcy court is familiar with many of the allegations of fraud at issue in the D.C. Action due to LSG's Complaint Objecting to the Discharge of Mirza's debt which cites allegations of fraud. Many of these fraud issues are still pending before the bankruptcy court, as is the Trustee's adversarial proceeding against Mirza, Sr., and TM on the basis of concealing estate assets.

As for the final In re: Robbins factor, it may be true that a judgment against Mirza can be enforced through the bankruptcy court. However, it is also possible that the bankruptcy proceedings will have ended before the D.C. Action is resolved.

On this record, there can be no guarantee of protection of the estate. Unlike the underlying action in In re: Robbins, which was on the verge of judgment when the stay issued, LSG's complaint was relatively recently filed and may not be resolved any time soon.

The Court recognizes that LSG's fraud claims may not be addressed in the bankruptcy court because Mirza is disputing LSG's creditor status; and, if the D.C. Action is dismissed for failure to join a necessary party, LSG could suffer an injustice. Even in light of these possibilities, the bankruptcy judge's ruling was neither an abuse of discretion nor based on erroneous legal reasoning.

Accordingly, the decision of the bankruptcy court will be AFFIRMED by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 10th day of August, 2010

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge